IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER WHITE, | : | Civil No. 1:22-CV-01173 |
| Plaintiff, | : | |
| v. | : | |
| TUCKER FREY, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

### MEMORANDUM

Before the court are Defendants' motion for summary judgment and Plaintiff's motions for an extension of time to file his mental health records and to serve SCI-Camp Hill with a subpoena for his mental health records. (Docs. 58, 78, 79.) For the following reasons, the court will grant Defendants' motion for summary judgment, deny Plaintiff's motions as moot, and enter judgment in Defendants' favor.

### PROCEDURAL HISTORY AND BACKGROUND

Plaintiff filed a complaint pursuant to 42 U.S.C. § 1983 in July of 2022, with a motion to proceed *in forma pauperis*. (Docs. 1, 2.) On August 29, 2022, the court entered an order granting Plaintiff's motion to proceed *in forma pauperis* and directing service of the complaint on the named Defendants. (Doc. 7.) Following resolution of a Federal Rule of Civil Procedure 12(b)(6) motion, the sole remaining claims include an excessive force claim against Defendants Frey and Thomas and a

1

First Amendment retaliation claim against Defendant Frey.  (Doc. 33.)  Defendants Frey and Thomas answered the complaint on September 12, 2023. (Doc. 36.)

The parties completed fact discovery, and Defendants filed a motion for summary judgment.  (Doc. 58.)  Defendants filed a statement of facts and a brief in support of the motion.  (Docs. 59, 61.)  Plaintiff filed an opposition statement of material facts and a brief in opposition to the motion for summary judgment. (Docs. 68, 69.)  On October 18, 2024, Plaintiff filed a motion for leave to file a sur-reply with a brief in support.  (Docs. 74, 75.)  The court granted Plaintiff's motion and construed the brief in support as a sur-reply.  (Doc. 81.)

Additionally, on October 18, 2024, the court received and docketed a series of documents including one titled a motion for extension of time to file Plaintiff's mental health records, Doc. 78, and motion to sever SCI-Camp Hill with subpoena for mental health records, Doc. 79.  On October 21, 2024, the court received and docketed a copy of Plaintiff's mental health records.[1]  (Doc. 80.)

## JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.  Venue

---

[1] Because Plaintiff submitted the outstanding mental health records, Doc. 80, the court will review them with the sur-reply and deny his pending motions for an extension of time, Doc. 78, and for a subpoena, Doc. 79, as moot.

is proper in this district because the alleged acts and omissions giving rise to the claims occurred at Lycoming County Prison, , which is located within this district. *See* 28 U.S.C. § 118(b).

## MOTION FOR SUMMARY JUDGMENT STANDARD

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case." *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the

court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## SUMMARY OF ALLEGED FACTS

The court will begin by setting forth a summary of the undisputed facts by the parties and noting the existence of factual disputes.

The incident at issue took place on May 28, 2022. (Doc. 59, p. 1; Doc. 68, p. 1.)[2] At this time, Plaintiff was a pretrial detainee at Lycoming County Prison and Defendants were employed as correctional officers at Lycoming County Prison. (Doc. 59, ¶¶ 1–3; Doc. 68, ¶¶ 1–3.) Plaintiff was housed in the G-Block, a disciplinary cell block, between November 4, 2021 and May 28, 2022. (Doc. 59, ¶¶ 4–6; Doc. 68, ¶¶ 4–6.) At meal times, meal trays for G-Block inmates are prepared in the prison kitchen and designated for a specific cell and bunk. (Doc. 59, ¶ 7; Doc. 68, ¶ 7.) The meal trays are then delivered to each cell in G-Block during meal times by correctional staff and/or inmate block runners. (Doc. 59, ¶ 8; Doc. 68, ¶ 8.)

Defendants allege that the correctional staff and/or inmate block runners delivering the food do not control which tray goes to any particular cell or inmate because each tray is labeled by cell and bunk. (Doc. 59, ¶ 9.) Plaintiff disputes this allegation, and states that "correctional staff, and inmate block runners do

---

[2] For ease of reference, the court uses the page numbers from the CM/ECF header.

5

control which tray goes to any particular cell." (Doc. 68, ¶ 9.) Likewise, Defendants allege that the correctional staff and/or inmate block runners who deliver the food do not control the amount of food on each tray; rather, that is determined in the prison kitchen. (Doc. 59, ¶ 10.) Plaintiff disputes this. (Doc. 68, ¶ 10.) Defendants allege that Defendant Frey did not remove or withhold any portion of the food from Plaintiff's meal tray on May 28, 2022. (Doc. 59, ¶ 11.) Plaintiff disputes this. (Doc. 68, ¶ 11.)

At approximately 4:40 p.m., Defendant Frey was collecting meal trays from G-Block after the meal. (Doc. 59, ¶ 12; Doc. 68, ¶ 12.) Defendants allege that Defendant Frey notice a tray was missing and determined that Plaintiff had not returned his meal tray. (Doc 59, ¶ 18.) Plaintiff disputes this. (Doc. 68, ¶ 10.)

Defendant Frey went to cell G-14 and ordered Plaintiff to return the meal tray. (Doc. 59, ¶ 19; Doc. 68, ¶ 19.) Plaintiff alleges that his tray was missing a full portion of chicken nuggets and that he told Defendant Frey, showed him his tray, and requested a new tray. (Doc. 68, ¶ 19.) Plaintiff then refused Defendant Frey's order to return the meal tray, and said that he was going to hold the tray until he got a full portion of chicken nuggets. (Doc. 59, ¶ 20; Doc. 68, ¶ 20.) Plaintiff admitted that the meal tray had food on it when he received it, including mashed potatoes and gray, and that the only food missing was a portion of chicken nuggets. (Doc. 59, ¶ 21; Doc. 68; 21.) Defendants allege that Defendant Frey

6

ordered Plaintiff to return the tray a second time. (Doc. 59, ¶ 22.) Plaintiff alleges that, at this time, he was requesting to see the shift supervisor on duty, and was denied by defendants. (Doc. 68, ¶ 22.) Defendants allege that Plaintiff refused Defendant Frey's command a third time. (Doc. 59, ¶ 23.) Plaintiff disputes this. (Doc. 68, ¶ 23.)

Defendant Frey left the G-Block to get Defendant Thomas to serve as back up to retrieve Plaintiff's food tray and to comply worth prison policy requiring two officers to be present before opening or entering a G-block cell. (Doc. 59, ¶¶ 24, 25; Doc. 68, ¶ 25.) Plaintiff disputes the policy statement, but not the factual allegation that Defendant Frey left to get Defendant Thomas. (Doc. 68, ¶ 24.)

Defendants Frey and Thomas entered G-Block together and approached Plaintiff's cell. (Doc. 59, ¶ 27; Doc. 68, ¶ 27.) Defendants allege that Defendant Frey ordered Plaintiff to return his food tray an additional time, and plaintiff refused again. (Doc. 59, ¶¶ 28–29.) Defendants allege that Defendant Frey then stepped into the cell and walked towards the meal tray. (Doc. 68, ¶ 32.) Defendants allege that as Defendant Frey entered the cell, he told Inmate Ransom to step out of the cell, and Inmate Ransom obeyed. (Doc. 59, ¶¶ 34–35.) Defendants allege that when entering the cell, the meal tray was on the desk in the back of the cell and Plaintiff was sitting on his bed. (Doc. 59, ¶ 33.) Defendants allege that Plaintiff got up from the bed, stepped in front of Defendant Frey and

blocked him from retrieving the tray.  (Doc. 59, ¶ 36.)  Defendants allege that Defendant Frey ordered Plaintiff to return the tray again.  (Doc. 59, ¶ 37.)  Defendants allege that Defendant Frey attempted to reach around Plaintiff, and Plaintiff shoulder-checked Defendant Frey in his chest and pushed him back.  (Doc. 59, ¶¶ 40–41.)  Defendants allege that Defendant Frey again attempted to reach around Plaintiff, and Plaintiff shoulder-checked him twice more with the third time being more forceful than the prior two.  (Doc. 59, ¶¶ 42–43.)

     Defendants allege that Defendant Frey then pushed Plaintiff to the cell wall in an effort to apply handcuffs.  (Doc. 59, ¶ 45.)  Defendants allege that Defendant Thomas then engaged in the situation to move Plaintiff out of the cell so he could be handcuffed.  (Doc. 59, ¶ 46.)  Defendants allege that Plaintiff resisted their attempts to handcuff him.  (Doc. 59, ¶ 47.)  Defendants allege that all three individuals exited the cell, and Defendant Thomas was pulling Plaintiff off Defendant Frey while Plaintiff had a hold of Defendant Frey's head and neck area.  (Doc. 59, ¶ 49.)  Defendants allege that all three men fell to the ground, and Defendant Frey was on the bottom.  (Doc. 59, ¶ 50.)  Defendants allege that Plaintiff "can be seen on the video winding up and throwing a punch at CO Frey's head."  (Doc. 59, ¶ 51.)  Defendants allege that Defendant Frey was able to get out from under Plaintiff and the two correctional officers held Plaintiff down on the ground and applied handcuffs.  (Doc. 59, ¶¶ 52–53.)

Plaintiff disputes the majority of the above allegations pertaining to the physical altercation between him and Defendants. (Doc. 68, ¶¶ 28–53.)

The parties agree that meal trays are marked for each cell and bunk and must be returned to the kitchen to be cleaned and reused at the next meal. (Doc. 59, ¶ 14; Doc. 68, ¶ 14.) Defendants allege that meal trays are not authorized items for inmates to keep in their cells after meal time and inmates are not permitted to keep their meal trays after meal times due to the risk that the tray could be used to assault staff or other inmates, or be fashioned into a weapon. (Doc. 59, ¶¶ 13, 15.) Defendants state that unreturned meal trays are considered contraband. (Doc. 59, ¶ 16.) Defendants state the corrections officers are trained to collect and inventory inmate meal trays to ensure that all of them are returned after meal time. (Doc. 59, ¶ 17.) Plaintiff disputes these facts, stating that he was not charged with contraband in misconducts for refusing to return his meal tray. (Doc. 68, ¶¶13, 15, 16, 17.)

## DISCUSSION

### A. First Amendment Retaliation Claim

Plaintiff has raised a First Amendment retaliation claim against Defendant Frey. (Docs. 1, 36.) Specifically, Plaintiff alleges that Defendant Frey removed a serving of chicken nuggets from Plaintiff's tray on May 28, 2022 as retaliation for a grievance Plaintiff filed against him on April 18, 2022. (Doc. 1, p. 8.)

9

A First Amendment retaliation claim requires the following elements: (1) constitutionally protected conduct; (2) an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) causation demonstrating that the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). The filing of a lawsuit or a prison grievance constitutes protected activity under the First Amendment. *Fantone v. Latini*, 780 F.3d 184, 191 (3d Cir. 2015).

Plaintiff cannot succeed on a First Amendment claim for the loss of a single serving of chicken nuggets because he cannot establish the second required element of an adverse consequence. "An adverse consequence 'need not be great in order to be actionable[;]' rather, it need only be 'more than *de minimis*.'" *Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016) (citing *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)). This court has found that the loss of a single (full) meal does not constitute an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *See Daughtry v. Kaurrman*, No. 3:17-cv-0442, 2021 WL 4502256, *13 (M.D. Pa. Sep. 30, 2021); *Ramey v. Marsh*, No. 4:21-CV-01018, 2022 WL 363854, *3 (M.D. Pa. Feb. 7, 2022) (*citing Zanders v. Ferko*, 439 F. App'x 158, 160 (3d Cir. 2011) (nonprecedential) (finding that denial of three meals over two days "fails to rise to the level of a[n Eighth

Amendment] violation"); *Lindsey v. O'Connor*, 327 F. App'x 319, 321 (3d Cir. 2009) (*per curiam*) ("The purported deprivation of a single meal is not of such magnitude as to rise to the level of a constitutional violation"). Therefore, regardless of the evidence presented by the parties, Plaintiff cannot succeed in his First Amendment retaliation claim against Defendant Frey, and the court will grant Defendants' motion for summary judgment as to the First Amendment claim.

### B. Eighth Amendment Excessive Use of Force Claim

Plaintiff also brings an Eighth Amendment excessive use of force claim against Defendants Frey and Thomas for the force they used in restraining him on May 28, 2022. (Doc. 1, 36.)

"The Eighth Amendment, made applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'" *Glossip v. Gross*, 576 U.S. 863, 876 (2015). "The Supreme Court has interpreted this prohibition . . . to bar prison officials from using excessive force against inmates[.]" *Young v. Martin*, 801 F.3d 172, 177 (3d Cir. 2015) (citing *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992)).

To demonstrate that a prison official defendant has violated the Eighth Amendment, a plaintiff must establish two (2) elements: a subjective and an objective element. *See Hudson*, 503 U.S. at 8. First, a plaintiff must show that the defendant acted with a "sufficiently culpable state of mind[,]" and second, a

11

plaintiff must show that the defendant's conduct was objectively "sufficiently serious[.]" *See Wilson v. Seiter*, 501 U.S. 294, 297–98 (1991). Where a prison official is alleged to have used excessive force in violation of the Eighth Amendment, the pertinent inquiry for the subjective element is "whether [the] force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *See Hudson*, 503 U.S. at 7; *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 231 (3d. Cir. 2015) (explaining that "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated[,]" and "[t]his is true whether or not significant injury is evident"). There are several factors that courts consider in determining whether a prison official has used excessive force against a prisoner, including:

> (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response."

*See Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

Here, Defendants have presented evidence that despite repeated requests by Defendant Frey, Plaintiff refused to comply with an order to return the meal tray. They then presented evidence that Plaintiff physically engaged Defendant Frey

12

through a series of shoulder-checks.  (Doc. 59, ¶¶ 20, 23, 28, 38, 39, 41, 43.)  As evidence in support of their motions for summary judgment, Defendants have submitted affidavits of Defendants, a deposition of Plaintiff, video evidence of the exchange, and a video Plaintiff's misconduct hearing.  (Docs. 60, 62.)

In reviewing the evidence presented, the court finds that Defendants have met their initial burden pursuant to *Celotex Corp.*  Plaintiff admitted that he refused Defendant Frey's orders to return the tray at his deposition. (Doc. 60, pp. 222–23.)  Defendant Frey and Defendant Thomas' depositions and incident reports state that Plaintiff shoulder-checked Defendant Frey multiple times.  (Doc. 60, pp. 8, 13, 19, 24.)  The court reviewed the submitted video evidence of the G-Block on May 28, 2022.  The video does not show the exchange (i.e. the alleged shoulder checks) that took place between Defendant Frey and Plaintiff in the cell.  Instead, the video initially demonstrates Defendant Frey entering the cell, another inmate exiting the cell, and Defendant Thomas standing at the entrance of the cell.  Once the parties exit the cell (at time stamp 1:10), it appears that Plaintiff is resisting Defendants' attempts to apply restraints, and just prior to the fall to the ground, it appears as if Plaintiff is reaching around Defendant Frey's neck/shoulder area (at time stamp 1:12).  Additionally, when the three individuals fall to the ground, Plaintiff lands on one of the Defendants and his arm is raised as if he is preparing to strike one of the Defendants (at time stamp 1:13).

13

Plaintiff has presented evidence in his attempt to dispute Defendants' motion in the form of his own affidavit, grievance reports, and deposition.  (Docs. 69, 69-3.)  In the grievances submitted by Plaintiff and the deposition, Plaintiff never mentions the alleged shoulder checks, but repeatedly alleges that Defendant Frey "charged" him.  (Doc. 69-9; Doc. 69-10, pp. 16, 27.)  In the affidavit, Plaintiff focuses on prison policy arguing both that a meal tray is not contraband and that an inmate cannot be removed from a cell without the direction of a shift supervisor.  (Doc. 69-3, ¶¶ 34, 35, 37, 38, 39.)  However, the question is not whether Defendants followed prison policy, but whether or not they violated the Eighth Amendment.  *See Atwell v. Lavan*, 557 F.Supp.2d 532, 556, n. 24 (M.D. Pa. Mar. 26, 2008) (*citing Mercy Catholic Medical Center v. Thompson*, 380 F.3d 142, 154 (3d Cir. 2004)).  Therefore, whether or not Defendants properly followed cell extraction policy is not at issue in this case.

What is at issue in this case is whether or not Defendants violated the Eighth Amendment through the use of excessive force.  This court has repeatedly found that corrections officers are warranted in the application of some level of force in an effort to retrieve contraband from inmates. *See, e.g., Rister v. Lamas,* No. 4:10–CV–1574, 2013 WL 786420, at *5 (M.D. Pa. Mar.1, 2013) (inmate suspected of possessing razor); *Tompkins v. Cnty. of Lackawanna,* No. 1:CV-11-1147, 2013 WL 593756, at *4 (M.D. Pa. Feb.14, 2013) (inmate suspected of possessing tobacco);

14

*Santiago v. Fields,* No. 05-CV-4884, 2009 WL 693642, at *5 (E.D. Pa. Mar.12, 2009) (inmate suspected of potentially possessing a razor).

Here, despite the disputed facts regarding whether or not Plaintiff engaged in shoulder checks in the cell, the undisputed facts support a grant of summary judgment in Defendants' favor in this action. It is undisputed that Plaintiff refused orders to return the meal tray. While Plaintiff attempts to dispute whether or not a meal tray is contraband, Defendants have produced affidavits stating that a meal tray retained after the meal is contraband, Doc. 60, pp. 6, 18, and Plaintiff has presented his misconduct reports demonstrating that when he withheld meal trays, he was not charged with possession of contraband, Docs. 69-6, 69-7. Instead, he was charged with refusing to obey an order. (*Id.*) Here, Plaintiff being charged with refusing to obey an order and disruption of prison routine, rather than the possession of contraband, for the times he refused to return his meal tray is not evidence that a meal tray is not contraband. As such, the court finds that the undisputed facts support the finding that Defendants' use of force was for the purpose of retrieving contraband.

As far as the amount of force used and whether or not it was reasonable, the court turns to the video supplied by Defendants. It demonstrates that once Plaintiff is restrained in cuffs, Defendants cease the use of force and the meal tray is retrieved from the cell by Defendant Frey (at time stamp 1:22 Defendant Thomas

reaches for his handcuffs; at 1:30 Plaintiff appears restrained; at 1:34 Defendant Frey stands up; at 1:48 Defendant Thomas stands up; at 1:57 both Defendants assist Plaintiff to a seated position; at 2:09 both Defendants hands are off Plaintiff and Defendant Frey proceeds to the cell; at 2:15 Defendant Frey exits the cell carrying the tray).  Therefore, Defendants have produced evidence that the force used did not exceed the goal of restraining Plaintiff and recovering the contraband. Plaintiff does not dispute these facts.  (Doc. 68, ¶¶ 53, 54, 56.)  Therefore, the court will grant Defendant's motion for summary judgment.

## CONCLUSION

For the above reasons, the court will deny Plaintiff's motions regarding his mental health records as moot and grant Defendants' motion for summary judgment.  The court will enter judgment in favor of Defendants and close the case.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: March 13, 2025